Randy Barron **CLARK**, Plaintiff,

v.

**BASF SALARIED EMPLOYEES' PENSION PLAN**, Defendant.

No. CIV. 1:03CV213.

United States District Court,
W.D. North Carolina,
Asheville Division.

July 8, 2004.

Phyllis A. Palmieri, Morganton, NC, for Plaintiff.

Louis A. Bledsoe, III, Julian H. Wright, Jr., Robinson, Bradshaw & Hinson, P.A., Charlotte, NC, for Defendant.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Defendant's motion to dismiss, filed January 30, 2004, the Plaintiff's request for a hearing, filed March 1, 2004, the Plaintiff's motion pursuant to Federal Rule of Civil Procedure 56(f), filed March 1, 2004, and the Defendant's motion to dismiss the first amended complaint, filed June 4, 2004.

### I. PROCEDURAL HISTORY

Plaintiff initiated this action on August 25, 2003, alleging violations of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* Specifically, the Plaintiff alleges improprieties in the computation of his entitlement to retirement benefits, both as to years of service and the value of his pension. **Complaint, filed August 25, 2003.** In lieu of an answer, the Defendant served a motion to dismiss on January 30, 2004. Plaintiff thereafter filed an amended complaint, to which the Defendant objects. **Plaintiff's First Amended Complaint, filed March 1, 2004.** The proposed amended complaint would add an

additional claim based on equitable estoppel. *Id.*

## II. STANDARD OF REVIEW

"A complaint should not be dismissed for failure to state a claim upon which relief may be granted unless after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir.2003).

## III. ALLEGATIONS OF THE COMPLAINT

From June 18, 1976, through May 18, 1980, the Plaintiff was employed by Inmont Corporation, which was a predecessor company of BASF Corporation in Morganton, North Carolina. Complaint, ¶¶ 6–7. From 1980 until September 3, 1991, the Plaintiff was not employed by either Inmont or BASF. *Id.*, ¶¶ 7–8. Plaintiff was rehired by BASF in September 1991 at which time he alleges that Pat Brittain and Steve Byrd, who are alleged to be agents of the BASF Corporation Salaried Employees' Pension Plan (Plan), told him that for purposes of computing his pension benefits, his date of hire would remain June 1976 with no break in service for the 11 years during which he did not work for BASF or its predecessor. *Id.*, ¶ 11. In 1997, the Plan provided a pension computation document to the Plaintiff which credited him with service from 1976. *Id.*, ¶ 14. At the end of 1999, the Plaintiff received from the Plan a "Personalized Statement" which indicated that he had 23.5 years of credited and vested service which meant he was fully vested in his pension. *Id.*, ¶ 15. It also noted an estimated annual accrued pension benefit of $14,664.36. *Id.*

During the same year, the Plan required the Plaintiff to choose between continuing his participation in the traditional pension plan or converting to a cash balance plan. *Id.*, ¶ 18. Plaintiff alleges that the Plan provided him with information that the value of his cash plan was $50,000. *Id.*, ¶ 19. Plaintiff also alleges that he was not informed by Plan fiduciaries that the cash value could decrease. *Id.* The Plaintiff chose to convert to the cash value plan.

On August 24, 2000, the Plaintiff received a document from the Plan which showed the cash balance of his pension as of June 30, 2000, to be $24,750.30, and noted his years of service were 12.750. *Id.*, ¶ 20. In 2001, the Plaintiff received a document showing his date of hire as October 1, 1987. *Id.*, ¶ 21. He received a Pension Plan Statement on February 19, 2001, which showed his cash balance as $27,552.66, with vested years of service as 9.250. *Id.*, ¶ 23. On June 30, 2001, a pension document generated by the Plan showed the Plaintiff's balance as $29,799.83, and his years of service as 9.9167. *Id.*, ¶ 22. A Plan statement provided on August 10, 2001, showed his cash balance had decreased to $14,712.49, with years of service as 8.25. *Id.*, ¶ 24.

The percentage of contribution made to the Plaintiff's pension by his employer, BASF, is computed based on his years of service. *Id.*, ¶ 26. When the Plan reduced his years of service to reflect only those years during which the Plaintiff actually was employed by BASF or its predecessor, the employer's contributions decreased. *Id.*

## IV. DISCUSSION

Plaintiff's action is predicated on two allegations: the Plan should not have corrected his years of service; and the

Plan made unilateral withdrawals from his pension, apparently in order to correct excessive contributions by BASF based on the incorrect calculation of years of service. The first issue is whether, in ruling on this motion pursuant to Rule 12(b)(6), this Court may consider matters outside the complaint filed in this action but which were made of record in the prior action filed by the Plaintiff in this Court, *Clark v. BASF Corp.*, 229 F.Supp.2d 480 (W.D.N.C. 2002). "Despite the express language of Fed.R.Civ.P. 12(b), . . . '[t]he district court may also take judicial notice of matters of public record' without converting a 12(b)(6) motion into a motion for summary judgment." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir.1994) (quoting *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir.1991)); *accord, Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000); *Sebastian v. United States*, 185 F.3d 1368, 1374 (Fed.Cir.1999); *Helfrich v. Metal Container Corp.*, 102 Fed.Appx. 451, 2004 WL 1325690 *2 (6th Cir.2004); *Norfolk Federation of Business Dist. v. H.U.D.*, 932 F.Supp. 730, 736 (E.D.Va.), *aff'd.*, 103 F.3d 119 (table), 1996 WL 671293 *1 (4th Cir.1996) ("**In short, a court may consider matters of public record, items appearing in the record of the case, as well as exhibits attached to the complaint.**"). "[A] court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. Here, all of [Defendant's exhibits] are publicly-recorded papers from prior court proceedings. They meet the public records exception and [the Court] may consider them in deciding this motion to dismiss." *Happel v. Wal–Mart Stores, Inc.*, 286 F.Supp.2d 943, 945 (N.D.Ill.2003); *accord, Kaempe v. Myers*, 367 F.3d 958, 963 (D.C.Cir.2004). The undersigned will, therefore, consider the exhibits attached to the Defendant's motion to the extent that they were part of the public record from the Plaintiff's previous action in this Court.[1]

The first document referred to in the Plaintiff's complaint is the "Personalized Retirement Benefit Statement" dated January 1, 1997. **Exhibit 1, *attached to* Exhibit A, *attached to* Defendant's Brief in Support of Motion to Dismiss, filed January 30, 2004.** Pertinent provisions of that Statement include the following:

> The Pension Plan provides you with income at retirement at no cost to you. The amount you receive is determined by a specific formula which is based on a number of factors including your Final Average Earnings, Credited Service, estimated Social Security benefit, age when benefits begin, and the payment option you choose. . . . Participation in the Pension Plan begins on the first day of the month following the date you have completed 12 months of employment. . . . After you have completed five years of Vesting Service, you become 100% vested in your Pension Plan benefit. . . . Your estimated monthly benefit as of December 31, 1996, payable at age 65 under the Single Life Annuity option is $860. You are fully vested in your benefit.

> . . . . .

> The Company expects and intends to continue the Pension and Savings Plans indefinitely, but reserves the right to

---

1. It is noted that the same attorney currently representing the Plaintiff represented him during that action. In that action, the attorney attached to the complaint copies of the relevant documents which are only referenced in this complaint. Thus, the exhibits upon which the Defendant relies were actually part of that prior complaint and should have been attached to the pending one.

modify, amend, or terminate one or both of the plans at any time without prior notice. Your actual benefits will be based on the terms of each Plan as in effect from time to time and at the date of your termination. If the Pension Plan and/or Savings Plan are amended, your accrued benefits will not be reduced, although future benefits may be affected.... For additional information on the Pension and Savings Plans, please refer to the Summary Plan Description which can be found in the Employee Handbook.

*Id.* (emphasis in original).

The Statement reports that if the Plaintiff continued to work for BASF until his "Normal Retirement Date" of December 1, 2019, his monthly pension would be $1,822. *Id.* Although the statement reflects that the Plaintiff's "Credited Service Date" was "6/18/76," it does not disclose any pension earnings on behalf of the Plaintiff prior to September 1991. *Id.* This reflects the fact that although the Plaintiff would have been eligible to participate in the pension after his first year of service, he was not vested until after five years of service. Between 1976 and 1980, the Plaintiff had only four years of service and thus, did not vest at that time.

The next document is the 1999 document captioned "Choices in Retirement" and referenced in the complaint. **Exhibit 2, *attached to* Exhibit A, *supra*.** It provides that as of December 31, 1999, the Plaintiff was "projected to have 23.5000 Years of Credited Service" with the same amount of "Years of Vesting Service" with an "estimated annual Accrued Benefit [ ] projected to be $14,664.36, payable starting at age 65." *Id.* The statement also notes that the projections assume that "your Cash Balance Plan account earns a 6.5% annual return; and the Plan remains unchanged until your retirement date." *Id.*

Included with this document is another announcement that "[o]n January 1, 2000, BASF Corporation will offer all management-represented employees hired before July 1, 1999, the choice of participating in a new Cash Balance Plan or remaining in the existing Traditional Pension Plan. Determining which option is most appropriate for you is a very important decision." *Id.* The document then provides detailed instructions for determining the best option for the individual employee as well as an explanation of the manner in which each option worked. *Id.*

When making your decision, you will want to: carefully review and verify the personalized information on this statement; read through the Plan information in the accompanying booklet; fully understand the information provided and have all your questions answered; use the Choice Pension Projection Disk to project your benefit under both pension options, taking into account when you might retire or leave BASF; evaluate each option to determine which may be most appropriate for your personal situation; attend your local site meetings; and discuss your decision with your spouse and/or your financial planner.

*Id.* As with the earlier document, despite the fact that the Plaintiff was deemed to have 23.5 years of service, no pension earnings prior to September 1991 were noted. *Id.*

The Plaintiff did elect to participate in the cash balance option. As a result, on November 16, 1999, he received a "Pension Choice Election" notice which advised, "Because the option you elected can have a significant affect on the rate of your future pension accruals under the Plan (and in some circumstances, reduce those accruals), this notice is being sent to you and all current plan participants and eligible em-

ployees hired prior to July 1, 1999[.]" **Exhibit 3, *attached to* Exhibit A, *supra.***

On August 24, 2000, the Plaintiff was notified that his cash balance account contained $24,750.31, based on 12.7500 years of vesting service. **Exhibit 5, *attached to* Exhibit A.** On February 19, 2001, the Plaintiff was notified that his account contained $27,552.66 based on 9.2500 years of vesting service. **Exhibit 7, *attached to* Exhibit A.** This calculation of service obviously was based on the time since the Plaintiff's rehire in September 1991. On June 30, 2001, the Plaintiff had a cash balance account in the amount of $29,799.93, based on 9.9167 years of vesting service. **Exhibit 4, *attached to* Exhibit A.**

■ The documents referenced above were not the actual pension plan documents but projections provided to the Plaintiff by the Plan about his estimated pension benefits. In the complaint, the Plaintiff has alleged the following: (1) his pension benefits are provided to him by BASF through an employee benefit plan within the meaning of ERISA; (2) the Plan breached its fiduciary duties by limiting his service credit and accrued pension funds; (3) the Plan failed to provide full notice of the consequences of his choice to participate in the cash balance account; (4) the Plan failed to advise that if he chose the cash balance option, it could decrease the value of his balance; and (5) the Plan made withdrawals, reductions and changes in his account without notice or his knowledge. Complaint, ¶¶ 9–10, 16, 19, 25. "[Defendant] attached a copy of the [ERISA Plan] to its memorandum in support of its motion to dismiss. Because [the Plaintiff] relies on the agreement in [his] complaint, it was proper for the district court to consider it in ruling on the motion to dismiss." *Darcangelo v. Verizon Communications, Inc.,* 292 F.3d 181, 195 n. 5

(4th Cir.2002) (citing *New Beckley Mining Corp. v. Int'l Union, UMWA,* 18 F.3d 1161, 1164 (4th Cir.1994)). "'[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies.'" *Stewart v. Pension Trust of Bethlehem Steel Corp.,* 12 Fed.Appx. 174, 176, 2001 WL 691028 (4th Cir.2001) (quoting *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998)). "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997). Here, the Plaintiff's entire cause of action is based on the ERISA Plan. As a result, the undersigned will consider the copy of the actual Plan submitted by the Defendant in support of the motion.

■ Under the terms of the Plan, a "break in service" means a severance period of at least 12 consecutive months. **Exhibit E, *attached to* Defendant's Brief, at Section 2.10.** Thus, the Plaintiff had a break in service from 1980 through 1991. Prior to that time, the Plaintiff had not accrued five years of service with BASF or its predecessor and thus, was not entitled to participate in the pension plan during the years 1976 through 1980. *Id.,* at Section 5.07 (**requiring five years of vesting service**). And, the Plaintiff had a break in service prior to the time he was eligible to participate in the pension, a fact which impacts the calculation of any benefit subsequently earned.

In the case of any Participant who incurs a Break in Service prior to his becoming entitled to a Deferred Benefit,

his Periods of Service prior to said Break in Service shall be disregarded in computing Credited Service and Vesting Service if his last Severance Period equals or exceeds the greater of: (A) Five (5) consecutive Breaks In Service[.]

*Id.,* at Section 3.03(A). As noted above, the Plaintiff's break in service was 11 years, clearly more than the five years provided for in the Plan. As a result, the four years during which he worked for BASF prior to his "Break in Service" are not included in his period of service.

██ However, the Plaintiff does not merely contest the exclusion of these four years. He insists that his pension should be calculated based on the 11 years when he was not even employed by BASF. There is no question that the 1999 and 2000 statements of benefits erroneously attributed to the Plaintiff 23 years and 12.75 years of service respectively. The first mistake in the 1999 document was based on giving Plaintiff credit for having worked at BASF for the 11 year period between 1980 and his rehire in 1991. The second mistake in the 2000 document was based on giving the Plaintiff credit for the 4 years between 1976 and 1980. Both mistakes were corrected in later documents. And, the very first document ever received by the Plaintiff in 1997 showed he had no pension earnings prior to 1991. However, the fact remains that the projected or estimated benefits statements cannot alter the terms of the Plan itself. *Miller v. Coastal Corp.,* 978 F.2d 622 (10th Cir.1992) **(alleging facts almost identical to those at hand and holding neither benefits statements or oral assurances could modify the Plan to the date of the employee's service);** *Wheeler v. Westmoreland Retirement Plan,* 182 F.3d 912 (table), 1999 WL 410370 (4th Cir.1999). "An employee benefit plan cannot be modified, however, by informal communications, regardless of whether those communications are oral or written.... [W]ritten benefit statements [are] not formal plan documents, nor [are] they otherwise a part of the [ ] Pension Plan." *Miller,* 978 F.2d at 624 (internal citations omitted). It is inconceivable that an employee would expect to receive pension benefits for a period of time when he was not even employed by the employer. And, "[a]lthough the mistake [in the benefits statements] directly conflicted with the terms of the plan, ... [the Plaintiff] could have obtained the 'instruments under which the plan is established or operated' upon written request." *Id.* at 625 (quoting 29 U.S.C. § 1024(b)(4)).

 Finally, the Plaintiff claims that two representatives of the Plan orally assured him that his pension would be calculated as if he had never left the employment of BASF for 11 years. "However, regardless of the accuracy of this allegation, plaintiffs' claim fails because oral promises are unenforceable under ERISA and therefore cannot vary the terms of an ERISA plan." *Perreca v. Gluck,* 295 F.3d 215, 225 (2d Cir.2002); *accord, Librizzi v. Children's Mem'l Med. Cen.,* 134 F.3d 1302 (7th Cir.1998); *Biggers v. Wittek Indus., Inc.,* 4 F.3d 291, 295 (4th Cir.1993). "[O]ral and informal amendments to established ERISA plans are completely incapable of altering the specified terms of the plan's written coverage." *HealthSouth Rehabilitation Hosp. v. American Nat'l Red Cross,* 101 F.3d 1005, 1009 (4th Cir. 1996).

The Plaintiff also moved for leave to conduct discovery prior to any ruling on the motion to dismiss. That motion is somewhat ludicrous in view of the fact that this is the second cause of action brought in connection with the same set of facts. "No amount of discovery could have unearthed information which would contra-

vene the clear language of the Plan [.]" *Id.*, at 1009–10.

■ The Plaintiff's amended complaint is likewise dismissed. The additional claim for estoppel is, as a matter of law, unavailable. *Id.* The Fourth Circuit has "never recognized estoppel arguments which would serve to vary the terms of a written plan, a fact which [the Plaintiff] cannot avoid." *Id.*, at 1010.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's motions for oral argument and for discovery are hereby **DENIED;** and

**IT IS FURTHER ORDERED** that the Defendant's motion to strike the amended complaint is hereby **DENIED** as moot; and

**IT IS FURTHER ORDERED** that the Defendant's motion to dismiss is hereby **GRANTED** and the action is dismissed with prejudice by way of Judgment filed herewith.

### *JUDGMENT*

For the reasons set forth in the Memorandum and Order filed herewith,

**IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED** that the Defendant's motion to dismiss is **ALLOWED,** and this action is hereby **DISMISSED WITH PREJUDICE** in its entirety.